# Harry E. Young, by his next friend, George Young, Appellant, *v.* The Omnibus Company General.

*Negligence—Omnibus company—Infant—Nonsuit.*

In an action by a boy eleven years old against an omnibus company to recover damages for personal injuries, it appeared that the plaintiff at the time of the accident was skating upon a wide asphalted street, upon which the defendant operated a line of omnibuses. The plaintiff tripped on a pile of dirt, and as he did so he stumbled and fell immediately in front of the wheels of an omnibus which ran over him. The omnibus at the time was on the west or left hand side of the street. The plaintiff and one witness testified that at the time the boy fell, the driver was looking towards the east side of the street. The driver sat on a high seat with a dashboard at the top of the omnibus. *Held,* that a nonsuit was properly entered.

Argued Jan. 12, 1897. Appeal, No. 476, Jan. T., 1896, by plaintiff, from judgment of C. P. No. 4, March T., 1895, No. 360, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries.

At the trial it appeared that on March 20, 1893, between 9 and 10 o'clock in the evening, the plaintiff, a boy eleven years of age, was run over by one of defendant company's omnibuses on Broad street below South street in the city of Philadelphia. Broad street is a wide asphalted street. The driver of the omnibus sat on a high seat with a dashboard. When the accident occurred the omnibus was on the west or left hand side of the street. Plaintiff described the accident as follows:

" I skated up Broad until I came to Locust and started down from Locust street until I came to Bainbridge, then started up again until I came to the north side of Kater, on the west side of Broad. I tripped on some dirt or something in the street, and in tripping I faced south. I began to stumble, and the horses were about eight or ten feet away from me. Q. You say this was in March, 1893, between nine and ten o'clock in the evening? A. Yes, sir. Q. The omnibus was one of the large Broad street omnibuses, was it not? A. Yes, sir. Q. When you

slipped, which side of the street were you on? A. The west side. Q. How near to the curbstone? A. I was more to the curb—between the middle of the street and the curbstone; I was more towards the gutter. Q. Do you mean the west side? A. Yes, sir; the west side of the street. Q. Have you any idea about how many feet you were from the curbstone? A. No, sir; I can't tell you about that. Q. In stumbling you say you turned around? A. Yes, sir. Q. Did you go down on your hands? A. No, sir; my hands didn't touch. I kept falling, tumbling. I was falling at the time when I turned around."

The Court: "You mean that you were trying to recover yourself? A. Yes, sir; trying to get on my feet."

By Mr. Prichard: "Q. But your hands didn't actually touch the ground? A. No, sir. Q. You were going forward all the time? A. Yes, sir; and the bus was coming on a slant. Q. What part of the bus or the horses did you first strike? A. The swingletree. Q. On which side of the bus? A. On the west side. Q. Toward the curbstone? A. Yes, sir; towards the west side of the street. Q. The bus was going up Broad street? A. Yes, sir. Q. Then you were being dragged backward. At that time were you in front of the front wheel? A. Yes, sir; I was in front of the front wheel. Q. Were you outside of it or inside of it? A. Inside of it. Q. The driver was up over your head, was he not? A. Yes, sir. In stumbling as I was right in, I knew I was going against the bus. Looking up, I saw the driver was looking towards the east side of the street, and then I fell right against the swingletree and missed."

The account given by the other witness for the plaintiff was as follows:

"During that time there was a boy that came along. I halted to let the boy pass by. The boy just passed by me skating. I didn't know who he was at the time. While he was passing by he slipped, and as he slipped I went to make a grab for him—started right towards him and I hallooed. He caught hold of the traces close by the swingletree—the swingletree and the trace together. The skates went from underneath him, and he goes underneath, and by that he catches hold of the cross bar, holding it. . . . Q. How far after he got hold of the cross bar was he dragged? A. I should judge in the neighborhood of

the bus and horses, if not a little farther.   I didn't measure.
. . . Q. Which way was the driver looking?   A. Looking
towards South street, towards the clothing store—looking on
the east side."

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*W. Horace Hepburn,* for appellant.—The plaintiff in this suit
being a boy a little over eleven years of age, all questions as to
contributory negligence may be eliminated from the discussion,
for it is well settled that a boy of that age cannot be charged
with contributory negligence: Sandford v. Hestonville, etc.,
Ry., 153 Pa. 300; Kehler v. Schwenk, 144 Pa. 359; Barre v.
Reading City Pass. Ry., 155 Pa. 173; Flanagan v. Ry. Co.,
163 Pa. 102; Kaufhold v. Arnold, 163 Pa. 278.

It was the duty of the driver to be looking ahead: Johnson
v. Ry., 160 Pa. 647; Schnur v. Citizens' Traction Co., 153 Pa.
29; Pass. Ry. v. Foxley, 107 Pa. 537; Ehrisman v. Harrisburg
Ry. Co., 150 Pa. 180.

More than ordinary care was required in this case: Robinson
v. Cone, 22 Vt. 213; 1 Thompson on Negligence, 452; Daniels
v. Clegg, 28 Mich. 41; Mallard v. Ninth Ave. R. Co., 7 N. Y.
Sup. 666; Kerr v. Forgue, 54 Ill. 482; R. R. Co. v. Dewey,
26 Ill. 255; O'Mara v. R. R. Co., 38 N. Y. 445; Sheridan v.
R. R. Co., 36 N. Y. 39; Brennan v. Fair Haven R. R. Co.,
45 Conn. 284; Shenner v. St. Ry. Co., 78 Wis. 382; Beven
on Neg., 166; Whart. on Neg., 313, 389; Railroad Co. v.
Spearen, 47 Pa. 300; Pittsburg Ry. Co. v. Caldwell, 74 Pa. 421;
Philadelphia Ry. Co. v. Hassard, 75 Pa. 367; Sandford v. Ry.
Co., 136 Pa. 84.

The defendant's driver was also violating the "law of the
road" and should, therefore, have exercised more than ordinary
care: Whart. on Neg., 820; Beven on Neg., 653; Cruden v.
Fentham, 2 Esp. 685; Chaplin v. Hawes, 3 C. & P. 554; Grier
v. Sampson, 27 Pa. 183; Beach v. Parmeter, 23 Pa. 196; Elliott
on Roads and Streets, 620; Cooley on Torts, 666.

*Frank P. Prichard,* with him *James Wilson Bayard,* for appellee, cited, Chilton v. Traction Co., 152 Pa. 425; Flanagan
v. People's Pass. Ry., 163 Pa. 102.

PER CURIAM, January 25, 1897:

The single question in this case is, whether the court below erred in refusing to take off the judgment of nonsuit.

A careful consideration of the evidence has led us to the conclusion that the unfortunate and much to be regretted injury suffered by the plaintiff was accidental rather than the result of either his own or the defendant company's negligence. The testimony introduced for the purpose of showing that it was due to the defendant company's negligence was insufficient to justify the submission of that question to the jury, and hence there was no error in refusing to take off the judgment of nonsuit. There is nothing in the case that calls for further comment.

Judgment affirmed.